UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
————

| | | |
|---|---|---|
| GEORGE HALL, # 090753, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-1221 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| MIKE MARTIN, et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and federal statutory law. Plaintiff, George Hall, is a 76-year-old man serving multiple life sentences imposed by the Ingham County Circuit Court in 1975 on three first-degree murder convictions. At all relevant times, plaintiff was an inmate at the Lakeland Correctional Facility (LCF). His *pro se* complaint arises from an alleged decision by officials of the Michigan Department of Corrections (MDOC) in early 2010 to cease offering strict vegetarian diets to prisoners of the Jewish faith at LCF. In his verified complaint, plaintiff alleges that he is a Messianic Jew and that his reading of the scriptures commands him to restrict his diet to food items that contain no animal products whatsoever. Although plaintiff has available to him both a Kosher diet and a vegetarian Kosher diet, since April 8, 2010, he is no longer able to have a strict vegetarian (vegan) diet, although LCF offers such a diet to both Buddhists and Seventh Day Adventists.

Plaintiff sues five employees of the Michigan Department of Corrections in their official and personal capacities. Plaintiff seeks injunctive relief under the Religious Land Use and

Institutional Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a), reinstating his access to a strict vegetarian diet.  His section 1983 action against the individual defendants seeks monetary damages for violation of his First Amendment right to free exercise of his religion.

Presently pending before the court are defendants' motion for summary judgment and plaintiff's motion for a preliminary injunction ordering his access to a strict vegetarian diet. Defendants' summary judgment motion is supported by the affidavits of each defendant and seeks judgment both on the merits of plaintiff's claims and on the ground of qualified immunity. Defendants do not engage plaintiff's allegation that in early 2010 the Department of Corrections changed its policy with regard to offering strict vegetarian meals to Jewish inmates.  They only admit that in June 2010, defendant Michael Martin denied plaintiff's request for a vegan diet, on the ground that "there is no religious requirement that a strict vegetarian diet be observed" in the practice of Judaism.  (Martin Aff. ¶ 13, docket # 21-1).  In a supplemental response and affidavit (docket # 25), defendants further argue that plaintiff mistakenly assumes that a Kosher, strict vegetarian diet is available in the Michigan corrections system.  Defendants assert that certain prisons serve Kosher diets and vegetarian Kosher diets.  A strict vegetarian diet is available, but it is not Kosher.  In reply to defendants' supplemental assertion, plaintiff has sworn that the strict vegetarian diet formerly available to him at LCF was prepared in a Kosher kitchen, and he has filed numerous MDOC documents discussing the availability of a Kosher, vegan diet.  Plaintiff's motion for a preliminary injunction (docket # 17) seeks an order requiring his reinstatement to a "vegan Kosher diet."

Chief Judge Paul Maloney has referred this case to me for all pretrial purposes, including issuance of a report and recommendation on dispositive matters.  *See* 28 U.S.C. § 636(b)(1)(B).  Upon review of the record, I conclude that all defendants except Reverend Michael

Martin and Brad Purves are entitled to summary judgment for lack of personal involvement in the acts alleged in the complaint.  I further conclude that the claims for damages against defendants Martin and Purves in their official capacities are barred by the Eleventh Amendment, but that the claims for injunctive relief are not barred.  With regard to plaintiff's RLUIPA claim for injunctive relief, I determine that defendants Martin and Purves are not entitled to summary judgment, as material issues of fact preclude summary judgment.  On the First Amendment claims against Martin and Purves for damages in their individual capacities, I conclude that they are not entitled to qualified immunity.  Finally, I conclude that plaintiff is not entitled to a preliminary injunction, as the record does not establish with any degree of certainty the availability of his requested diet in the Michigan prison system.

### Proposed Findings of Fact

The relevant facts are established by plaintiff's verified complaint and attachments, in addition to defendants' affidavits and attachments.  The basic facts underlying this controversy are not in dispute, with one notable exception, which prevents the entry of summary judgment or of a preliminary injunction.

Plaintiff is a 76-year-old man serving a life sentence in the Michigan prison system. He professes to be a Messianic Jew.[1]  Plaintiff alleges that his sincerely held religious beliefs "hold man is scripturally mandated to eat no animal products."  (Compl., p. 2).  From sometime in 2008 through early April 2010, plaintiff was allowed to have a strict vegetarian diet, that is, a diet that contains no meat or meat products.  Plaintiff's verified complaint asserts that this strict vegetarian

---

[1] A Messianic Jew is one who accepts Jesus Christ as the Messiah.

diet also met the Kosher dietary restrictions.  "Plaintiff's strict vegetarian diet was prepared in the Kosher Kitchen by Kosher cooks, prior to its discontinuation." (Compl., p. 5).  It is undisputed that LCF at all relevant times provided Kosher meals, Kosher vegetarian meals, and a strict vegetarian menu.  What is disputed is whether the strict vegetarian menu also met Kosher dietary requirements.  Plaintiff avers that the former MDOC Food Services Manager, Gatha McClellan, approved a Kosher, vegan menu for LCF and that vegan meals were prepared by Kosher cooks beginning in 2008.  Defendants assert that no Kosher, vegan meal plan has ever been approved or served in the MDOC system.  (Supplemental Resp. & Aff., docket # 25).  Defendants ignore, however, plaintiff's allegations concerning McClellan's earlier approval of such a diet.[2]

In any event, for a period preceding April 8, 2010, plaintiff undoubtedly was allowed to have a strict vegetarian diet, whether or not it was also Kosher.  In early April 2010, as Passover ended, defendant Lawrence (the Assistant Food Service Director at LCF) informed plaintiff that the strict vegetarian menu would no longer be offered to those following a Kosher diet.  Lawrence told

---

[2] Plaintiff has rebutted defendant's submissions on this issue with substantial proof. Defendant Martin merely avers that "there has been no authorized MDOC strict vegetarian or vegan Kosher menu during my tenure as Special Activities Coordinator." (docket # 25-1, ¶ 5). The other defendants submitted similar affidavits, with defendant Lawrence averring that no such menu exists "nor am I aware of any plans to implement one." (docket # 19-3, ¶ 4). Plaintiff has submitted letters from MDOC officials that contradict these assertions. Gatha McClellan, the former CFA Food Service Program Manager, wrote a letter to LCF prisoner Bazzetta dated April 22, 2007, informing him that a "kosher vegan diet will be available at your facility by June 1, 2008." (docket # 26-1, ID# 232). Defendant McKinney wrote to Bazzetta on September 19, 2008, informing him that the "Kosher-Vegan menu is in the final stages of development." (*Id.* at ID# 234). A later letter from McKinney, dated December 16, 2009, informed Bazzetta that there was no date established for institution of a "new vegan kosher diet menu." (*Id.* at ID# 243). This exchange of correspondence makes it clear that no Kosher, vegan diet was ever approved for the entire MDOC system. Plaintiff asserts, however, that McClellan had approved such a diet for LCF, and he has provided an affidavit from a prisoner-cook (docket # 26-1, Vaugh Aff., ID#s 249-50) who avers that he prepared Kosher vegan meals at LCF at the direction of defendant Lawrence. The present state of the record therefore does not resolve the nature of the diet that plaintiff was receiving at LCF before April 8, 2010.

plaintiff that the Acting Food Service Director in Lansing (defendant Brad Purves) had ordered that only Kosher vegetarian (and not vegan) menus be offered, as he deemed the former practice to be a "mistake." (Compl., p. 2). Lawrence gave plaintiff a menu entitled "Kosher-Vegetarian" with the handwritten notation "This menu will begin for you after Passover." (docket # 1-1, ID# 19). Plaintiff wrote to defendant Brad Purves. Defendant Jill McKinney (the Assistant Food Service Program Manager) wrote back to plaintiff, informing him that "Central Office Food Service" had indeed directed prisons with Kosher food lines to "return to the kosher vegetarian menu." (*Id.* at ID# 15). Defendants' affidavits ignore plaintiff's documented assertion that Purves ordered a policy change regarding Kosher diets, effective April 2010.

Plaintiff began filing grievances concerning the decision to deny him a strict vegetarian diet. The grievances are attached to the complaint as Exhibit 1. (docket # 1-1). Defendants do not appear to contest the course of events chronicled in that exhibit. From the very first communication (ID# 20, dated April 21, 2010), plaintiff asserted that his desire for a strict vegetarian diet "is based upon or required by my (sincerely held) religious beliefs." Plaintiff's grievances and other submissions were supported by numerous citations to Scripture. (*See, e.g.*, ID#s 21, 26-27). He also submitted excerpts from a book titled *The Jewish Dietary Laws*, which argued that Adam was "clearly meant to be a vegetarian" and that the eating of meat was allowed by God as a compromise to man's sinful nature. (*Id.* at ID#s 29-45). Plaintiff conceded that a strict vegetarian diet was not "required" by his religion, but represented "my personal belief in what I should do to best serve my God. Romans 14:14." (ID# 27). On April 26, 2010, defendant O'Brien, the Food Service Director at LCF, informed plaintiff that he would "need to choose either the Kosher

menu or the strict vegetarian menu.  Chaplain Tompkins will need to know your choice as all requests for religious diets go through his office."  (Handwritten note, found on ID# 21).

Chaplain Tompkins interviewed plaintiff on May 2, 2010.  The subject of the interview was whether plaintiff should be allowed a strict vegetarian diet to accommodate his beliefs as a Messianic Jew.  The results of the interview were transmitted to defendant Michael Martin, an ordained Lutheran minister who holds the position of Special Activities Coordinator.  Defendants concede that defendant Martin had the authority pursuant to Policy Directive 05.03-150 (¶ SS) to grant or deny prisoner requests to eat from the various religious menus made available throughout the MDOC.  (Martin Aff. ¶ 5, docket # 21-1).  Martin reviewed plaintiff's request to participate in the strict vegetarian diet, as well as a "religious menu questionnaire" that plaintiff completed for the purpose.  (*Id.* at ¶ 12).  Martin denied the request.  His affidavit sets forth the following rationale:

> Hall's religious preference is Judaism.  There is no religious requirement that a strict vegetarian diet be observed.  In fact, Judaism goes into considerable detail regarding the animals, fowl and fish that may be eaten, and how the permitted creatures should be slaughtered and their meat prepared.

(*Id.* at ¶ 13).  On June 16, 2010, Reverend Martin sent a memo to Chaplain Tompkins, as well as the LCF Warden, informing them of his decision.  (docket # 1-1, ID# 28).

Plaintiff exhausted the grievance procedure without success.  He is now offered a "Kosher vegetarian" diet, which does include eggs and meat byproducts.  It is undisputed that Buddhists and Seventh Day Adventists are allowed to access the strict vegetarian diet on religious grounds.  He initiated this lawsuit on December 10, 2010, naming five individual defendants.  Read with the required liberality, plaintiff's *pro se* complaint asserts both RLUIPA and First Amendment free exercise claims against all defendants.  Plaintiff complains both about the decision in April 2010

-6-

to abolish the Kosher strict vegetarian diet at LCF and the decision in June 2010 to deny his specific request for a religious accommodation.

## Discussion

I.     **Motion For Summary Judgment**

A.     Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 599 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  FED.

R. CIV. P. 56(e)(2), (3); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555  F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

        B.     <u>Individual Responsibility</u>

Plaintiff has sued for injunctive relief under RLUIPA and for an assessment of damages under 42 U.S.C. § 1983 for violation of his First Amendment right to free exercise of his religion. He has named as defendants five employees of the Michigan Department of Corrections: Reverend Michael Martin, Special Activities Coordinator of the MDOC; James K. O'Brien, Food Service Director at LCF; Assistant Food Service Director at LCF; Jill McKinney, Assistant Food Service Program Manager for the MDOC in Lansing; and Brad Purves, who held the position of Acting Food Service Program Manager for the MDOC from December 2009 until June 27, 2010, and is now the Food Service Program Manager. Each defendant except Reverend Martin has moved for summary judgment on the ground of lack of personal involvement regarding the decision to deny plaintiff access to a strict vegetarian diet. Each moving defendant has filed an affidavit asserting that the defendant has no authority to place a prisoner on any particular religious menu plan.[3]  The affidavit of Reverend Martin, by contrast, asserts that he has sole authority to review and approve prisoner requests for special diets based on their religion. (Martin Aff. ¶ 5, docket # 21-1).  His affidavit is supported by MDOC Policy Directive 05.03.150 (¶ SS), which clearly places the responsibility for approving such requests upon the "CFA Special Activities Coordinator." (*Id.* ¶ 6; *see* docket # 21-1, ID# 168).

---

[3] Defendants' affidavits were submitted with their motion for summary judgment.  (*See* docket # 19).  The affidavits of Martin, McKinney and Purves were unsigned.  This defect was cured approximately ten days later by the filing of signed affidavits.  (*See* docket # 21).

Liability under the federal civil rights laws must be premised on an individual's personal involvement in the violation of a plaintiff's constitutional rights. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976)). For persons who did not themselves commit an unconstitutional act, a plaintiff must show that the person at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending actor and that such acquiescence was a proximate cause of the plaintiff's harm. *See Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011). Liability may not be imposed vicariously or upon a theory of *respondeat superior*. *Id.*; *see Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010).

The present record conclusively shows that all defendants, except Reverend Martin, are entitled to summary judgment on plaintiff's claims arising from the decision in June 2010 to deny his request for accommodation. Although plaintiff communicated his request for a special diet to several departmental employees and received answers to his request through others, none of the moving defendants were in a position to decide, or even influence, his request for special accommodation. MDOC policy places the decision whether or not to accommodate a religiously based dietary request squarely with the CFA Special Activities Coordinator, Reverend Martin. Although plaintiff cannot be faulted for assuming that other defendants may have had something to say on the subject, the record shows otherwise. The defendants other than Martin were merely conduits for the transmission of information, or they implemented Martin's decision. Plaintiff's own exhibits corroborate this conclusion. The decision to disapprove plaintiff's request for a strict vegetarian diet was communicated in a memo from Reverend Martin dated June 16, 2010. (docket # 1-1, ID# 28). Plaintiff thereafter filed an institutional grievance. The warden of LCF, Carol

Howes, responded to the Step 2 appeal by informing plaintiff that the decision to disapprove his request was made by Reverend Martin and that "his decision cannot be overturned at the institution level." (*Id.* at ID# 48). There is no evidence before the court to support a conclusion that any of the other defendants had any ability to influence Martin's decision, let alone overturn it.

Plaintiff also complains about the earlier decision in April 2010 to no longer offer the strict vegetarian diet to Jewish prisoners at LCF. According to plaintiff's complaint, this decision precipitated his subsequent request for accommodation. Plaintiff avers that defendant Lawrence told him that defendant Purves, the Acting Food Services Manager in Lansing, had made this decision. (Compl., p. 2). He further asserts that defendant McKinney confirmed this fact in a letter dated June 16, 2010. (docket # 1-1, ID# 15). Surprisingly, the affidavits of these defendants are utterly silent concerning the decision -- whatever it was -- concerning strict vegetarian meals made in April 2010. They neither confirm nor deny plaintiff's assertions about a change in policy, and they ignore Ms. McKinney's correspondence, which is evidence both that there was a change in policy and that defendant Purves was responsible for it. The affidavit of Purves (docket # 21-3) ignores the incident completely and does not attempt to rebut the letter of his subordinate, McKinney, which ascribes responsibility to him.

On the question of personal responsibility for the acts alleged in the complaint, the record conclusively demonstrates that defendant Martin was solely responsible for the denial on June 16, 2010, of plaintiff's request for religious accommodation. All other defendants are entitled to summary judgment on plaintiff's claims arising from this decision. With regard to the earlier decision to change the policy regarding strict vegetarian meals for Jewish prisoners, plaintiff has submitted sufficient proof to establish that such a decision was indeed made and that defendant

Purves was responsible for it.  No proof has been presented that any other defendant had personal involvement in this decision, except to communicate the decision to plaintiff.  All defendants except Purves are therefore entitled to summary judgment on plaintiff's claims regarding this alleged change in food service policy regarding Jewish prisoners.

C.     RLUIPA Claim For Injunctive Relief

Plaintiff seeks relief against defendants Martin and Purves under RLUIPA.  The Sixth Circuit, and every other appellate court that has addressed the issue, have held that RLUIPA, as an exercise of Congress's Spending Clause power, does not authorize a claim for damages against state employees in their individual capacities.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *accord Sharpe v. Johnson*, 669 F.3d 144, 154-55 (3d Cir. 2012); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327-28 & n.23 (5th Cir. 2009), *aff'd on other grounds*, 131 S. Ct. 1651 (2011); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272-75 (11th Cir. 2007).  On this basis, this court routinely holds that RLUIPA does not provide a cause of action for damages against state actors in their individual capacities.  *See, e.g., Green v. Tudor*, 685 F. Supp. 2d 678, 699 (W.D. Mich. 2010).

This leaves a RLUIPA claim against defendants Martin and Purves for prospective injunctive relief in their official capacities.  *See Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 604-05 (5th Cir. 2008).  Defendants assert the defense of qualified immunity against this claim, but such a defense is unavailable to them.  The defense of qualified immunity shields government officials from claims for monetary damages, not injunctive relief.  *Ward v. Polite*, 667

F.3d 727, 742 (6th Cir. 2012). The RLUIPA claim for injunctive relief against defendants Martin and Purves must therefore be decided on its merits.

RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that "imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Unlike cases arising under the Free Exercise Clause of the First Amendment, RLUIPA applies even where the burden on the prisoner "results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a). To establish a claim under RLUIPA, a plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion. 42 U.S.C. § 2000cc-2(b). Once the plaintiff establishes this *prima facie* case, the defendants "bear the burden of persuasion on any [other] element of the claim." *Id.* This includes the question whether defendant's decision is "the least restrictive means of furthering a compelling governmental interest." *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006). The federal courts have held that a prisoner's religious dietary practice is substantially burdened within the meaning of RLUIPA when prison officials force him to choose between his religious diet and adequate nutrition. *See Nelson v. Miller*, 570 F.3d at 879 (collecting cases); *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (failure to provide Kosher diet is a substantial burden on practice of faith).

The claim for injunctive relief against Purves is clearly not subject to summary judgment on this record, as Purves has not even met his initial burden of pointing to the absence of a triable issue of fact against him. Plaintiff has provided credible evidence that a change in MDOC

-13-

policy regarding the diet offered to Jewish prisoners was implemented in April 2010 (*see, e.g.,* docket # 1-1, ID# 19) and he has further produced evidence that defendant Purves was responsible for the policy change.  (*Id.* at ID# 15).  Defendants have ignored these allegations, and Purves's affidavit says nothing about the policy change.  Defendants' motion advances no reason why Purves might be entitled to dismissal of this claim.  Furthermore, if the court does rule in plaintiff's favor in a way that requires some accommodation in the MDOC food policy, Purves appears to be the appropriate official to implement such injunctive relief.  His motion for summary judgment on the RLUIPA claims must therefore be denied.

Central to the resolution of plaintiff's RLUIPA claim against defendant Martin is the express statutory provision that the term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  The Supreme Court has pointedly noted that this provision of RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 732 n.13 (2005).  The Act, however, does not preclude inquiry into the *sincerity* of a prisoner's professed religiosity.  *Id.*  RLUIPA therefore establishes a dichotomy between the sincerity of a prisoner's request for religious accommodation (a subjective inquiry) and the orthodoxy of the request (an objective inquiry).  Although prison officials may reasonably inquire into the subjective sincerity of a prisoner's request for religious accommodation (and look to objective facts as a measure of subjective sincerity), RLUIPA forbids denial of an accommodation merely because the accommodation is not "compelled by" or "central to" the prisoner's faith.  42 U.S.C. § 2000cc-5(7)(A).  The same dichotomy has long existed in First Amendment jurisprudence.  A request for accommodation under the First Amendment must be based upon sincerely held

religious beliefs, and may not be invoked simply to protect "any way of life, however virtuous and admirable" based on purely secular considerations. *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). This inquiry is altogether different from the question whether the religious practice is dictated by or central to a particular religion. In *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 456-58 (1988), the Supreme Court rejected the "centrality test" as inconsistent with the Constitution, precisely because such an approach would force the judiciary to decide that some religious adherents misunderstand their own religious beliefs. *Id.* at 457-58.

The undisputed facts in this case show that defendant Martin rejected plaintiff's claim for accommodation precisely because the tenets of Judaism do not require adherence to a strict vegetarian diet. (Martin Aff. ¶ 13, docket # 21-1). Martin was acting pursuant to MDOC policy directive, which allows a religious dietary accommodation only "if it is necessary to the practice of the prisoner's designated religion." (Policy Directive 05.03.150, ¶ SS; docket # 21-1, ID# 168). The flaw in this approach is that it does not focus on the relevant issue (a prisoner's subjective religious sincerity) but on an illicit consideration (whether the requested accommodation is objectively consistent with the tenets of the prisoner's professed religion and is "necessary to the practice" of that religion). This purely objective approach cannot be squared with either RLUIPA or First Amendment jurisprudence. In order to be entitled to an accommodation, a person's beliefs need not be "acceptable, logical, consistent or comprehensible to others." *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981). Nor must they be shared by all members of a religion or be part of any orthodox or official interpretation of church doctrine. *Id.* at 715-16. "We reject the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization." *Frazee v. Ill. Dep't of Empl. Sec.*, 489 U.S.

829, 834 (1989). By basing his decision purely on the fact that Judaism does not require a vegan lifestyle, while ignoring plaintiff's clear profession of a religious basis for his requested accommodation, Martin set himself up as arbiter of plaintiff's religious orthodoxy. To be eligible for consideration of a religious accommodation under RLUIPA, a prisoner must only demonstrate his religious sincerity. The statute itself bars inquiry into whether the particular religious belief or practice "is essential to a prisoner's religion." *Cutter*, 544 U.S. at 725 n.13. In direct contradiction to the requirements of the statute, the MDOC continues to base accommodation on a chaplain's determination of the objective orthodoxy of the request. Martin never found that plaintiff's religious request for a Kosher vegan diet was insincere or based purely on secular concerns; he merely found that it was not consistent with the tenets of Judaism.

The federal courts of this country have repeatedly rejected, under both RLUIPA and First Amendment jurisprudence, disapproval of requests for religious accommodation on the ground that the religious accommodation was not compelled by or central to the prisoner's professed religion. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 297-99 (6th Cir. 2010) (touchstone for determining whether religious belief is entitled to free-exercise protection is an assessment of whether the beliefs are sincerely held, not whether the belief is accurate or logical); *Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008) (prison officials who denied dietary accommodation on the ground that the prisoner's professed religion did not impose such restrictions required the prisoner "to establish exactly what RLUIPA does not require."); *Dawson v. Burnett*, 631 F. Supp. 2d 878, 882 (W.D. Mich. 2009) ("Furthermore, defendants are incorrect that Plaintiff must establish that his dietary preference is central or indispensable to the practice of his religion. Plaintiff need only establish his requested diet is based upon or required by his religious beliefs."). Despite similar

-16-

rulings by this and other federal courts, the Michigan Department of Corrections persists in its focus on religious orthodoxy (as opposed to religious sincerity) and the Michigan Attorney General persists in arguing to this court that religious accommodations may be denied on the basis of a chaplain's determination that the religious practice is not "necessary" to the prisoner's professed religion. The "necessity" test set forth in the policy directive is clearly flawed. The undisputed rationale for defendant Martin's refusal to accommodate plaintiff's request for a dietary accommodation was contrary to the provisions of RLUIPA. *See Koger*, 523 F.3d at 803 ("Likewise, in requiring clergy verification, prison officials applied a clergy-as-arbiter-of-orthodoxy standard that has long been rejected." (citing *Frazee*, 489 U.S. at 834)).

Defendant Martin's own affidavit and evidence establish plaintiff's *prima facie* case under RLUIPA. The burden then shifts to defendant to show that his denial of plaintiff's request for dietary accommodation furthered compelling a governmental interest and that this was the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a)(1)-(2). As defendant has the burden of proof on this issue, he cannot succeed on a motion for summary judgment unless the proofs are so one-sided that no reasonable trier of fact could ever find in plaintiff's favor on this issue. *See Arnett*, 281 F.3d at 561. Defendant Martin attempts to carry his burden of justifying his decision by reference to familiar institutional concerns, such as cost, prison order, and the need to prevent manipulating transfers on the basis of false claims for a particular religious menu. (Martin Aff. ¶¶ 8-11, docket # 21-1). All of these considerations are legitimate and can even be deemed compelling in certain circumstances. Defendant Martin has not, however, attempted to establish the compelling nature of these justifications beyond merely articulating them. At least two can be rejected out of hand. There is no basis to conclude that plaintiff's efforts to obtain a strict vegetarian

-17-

diet were a pretext for manipulating a transfer. The record is devoid of any request by plaintiff for a transfer. Beyond that, plaintiff has submitted significant evidence showing that he and other Jewish prisoners made a concerted effort over a period of years to institute a Kosher, vegan meal plan at LCF, not some other prison. (*See* Bazzetta Aff. & attachments, docket # 26-1). With regard to institutional order, the record shows that plaintiff was granted access to a strict vegetarian diet for the two-year period preceding April 2010. There is no evidence that this accommodation undermined prison order, nor is there any evidence that reinstating the accommodation would do so.

The cost issue is more substantial. The Supreme Court has recognized that considerations of cost and limited prison resources can provide a compelling governmental interest under RLUIPA. *Cutter*, 544 U.S. at 722; *accord Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007). Two considerations preclude the entry of summary judgment for defendant Martin on this issue. First, Martin has presented absolutely no evidence concerning the cost or other institutional consequence of accommodating plaintiff's desire for a strict vegetarian diet. Second, it appears to be undisputed that Buddhists and Seventh Day Adventist prisoners at LCF are indeed being served a strict vegetarian meal. As Chief Judge Maloney has previously held, a prison's justification for refusing to provide a religiously based diet on the basis of cost disappears when there is evidence that other prisoners at the same facility are already receiving that diet. *Dawson*, 631 F. Supp. 2d at 883.

At this point in the analysis, the factual dispute disclosed in the record looms large. If plaintiff is merely requesting access to the same strict vegetarian diet that is already being served to other prisoners at LCF, the cost justification for denying him such access would be utterly insubstantial. Defendant could not possibly bear his burden of showing a compelling governmental

interest in denying prisoner A the same diet that is being served to prisoners B through X in the same facility, let alone that such denial is the least restrictive means of addressing the issue of cost.  If, however, plaintiff is demanding a diet that is not presently served at LCF and, in fact, has never been approved in the Michigan prison system, the cost justification shifts dramatically.  For purposes of summary judgment, it suffices to say that a material issue of fact exists on the justification issue, on which defendant Martin bears the burden of persuasion.

In summary, I conclude that defendant Purves has not met his initial burden to show entitlement to summary judgment.  In fact, his affidavit ignores the allegations against him completely.  I further conclude the record shows a *prima facie* case that defendant Martin denied plaintiff's request for a religious accommodation in violation of RLUIPA.  Martin has the burden of showing that his decision was based on compelling governmental interests and represented the least restrictive means of addressing those interests.  He has not shown entitlement to summary judgment on the justification issue.  His motion for summary judgment on plaintiff's claim for injunctive relief under RLUIPA must therefore be denied.

D.    First Amendment Claim For Damages

Plaintiff brings a claim under 42 U.S.C. § 1983 for abridgement of his free-exercise rights under the First Amendment, arising from the policy change in April 2010 regarding Jewish prisoners and the denial of plaintiff's subsequent request for a Kosher vegan diet.  A claim for damages under section 1983 may be maintained against a state officer only in his individual capacity.  A claim against the officer in his official capacity is tantamount to a claim against the State itself, which is barred by the Eleventh Amendment.  *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985);

*Colvin v. Caruso*, 605 F.3d at 289. The damage claim under section 1983 against Martin and Purves in their official capacities must therefore be dismissed. The damage claim may proceed against them in their individual capacities.

The section 1983 claim against Purves arising from his alleged change in policy regarding Jewish prisoners is not susceptible to summary judgment on this record. Again, by ignoring the substance of plaintiff's allegations, Purves fails to meet his initial burden. Plaintiff has alleged facts against Purves in a verified complaint and has produced evidence, in the form of a letter form Purves's subordinate, substantiating plaintiff's allegations. Purves has neither admitted nor denied plaintiff's allegations, and his affidavit ignores the entire incident upon which plaintiff bases his claim against him. This cannot possibly entitle him to a summary judgment.

To establish his free exercise claim against Martin, plaintiff must show (1) his belief or practice is religious in his own scheme of things and (2) the belief is sincerely held. *See Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001). In this respect, First Amendment jurisprudence mirrors analysis under RLUIPA, as discussed above. The record establishes that plaintiff's request to Martin for a strict vegetarian diet was clearly based on religious, rather than secular, considerations. Defendants have never challenged the sincerity of plaintiff's beliefs. As noted, the only reason for denying his request was that a vegan diet is not "necessary" for the practice of Judaism. This rationale is illicit, both under RLUIPA and under First Amendment jurisprudence. *See Dawson*, 631 F. Supp. 2d at 884.

A prisoner's First Amendment rights, however, are not unlimited. A prisoner who demands a special diet based on sincere religious belief is not thereby automatically entitled to have his wish granted. In the prison context, First Amendment rights are subject to balancing against

legitimate governmental interests. Thus, even in the face of a valid free-exercise claim, a prisoner's

First Amendment rights are subject to balancing under the familiar *Turner* test:

> First, there must be a "valid, rational connection" between the prison regulation and
> the legitimate governmental interest put forward to justify it. . . . Moreover, the
> governmental objective must be a legitimate and neutral one. . . . A second factor . . .
> is whether there are alternative means of exercising the right that remain open to
> prison inmates. . . . A third consideration is the impact accommodation of the
> asserted constitutional right will have on guards and other inmates, and on the
> allocation of prison resources generally. . . . Finally, the absence of ready alternatives
> is evidence of the reasonableness of a prison regulation. . . . [I]f an inmate claimant
> can point to an alternative that fully accommodates the prisoner's rights at *de minimis*
> cost to valid penological interests, a court may consider that as evidence that the
> current regulation does not satisfy the reasonable relationship standard.

*Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

The federal courts have applied the *Turner* test in a variety of contexts to judge the

validity of refusals by prison officials to accommodate prisoners' requests for religious

accommodation. In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the companion case to

*Turner*, the Supreme Court upheld the decision of prison officials to preclude prisoners who were

members of the Islamic faith from attending religious services held on Friday afternoon. Central to

the Court's decision was a finding that accommodation of this request would require a single guard

assigned to the work detail to bring the whole work team back to the prison facility, deliver the

Muslim prisoners to the communal prayer service, and then return the rest of the prisoners back to

their work detail. *O'Lone*, 482 U.S. at 345-47. In light of the other significant accommodations

made to Muslim prisoners to practice their faith, the Court found that the decision of prison officials

was reasonable. By contrast, in *Whitney v. Brown*, 882 F.2d 1068 (6th Cir. 1989), Jewish inmates

challenged the decision of Michigan prison officials to end a 45-year-old practice of allowing Jewish

inmates to meet for weekly Sabbath services and for an annual Passover Seder. Although the

-21-

decision was based upon legitimate penological concerns about security and staffing, the Court found that the decision had deprived Jewish inmates of any opportunity to practice their religion in a congregate manner and therefore saw no reasonable alternative to allowing prisoners to gather in the central complex, as they had been allowed to do for the previous 45 years. 882 F.2d at 1074-76; *see also Berryman v. Granholm*, 343 F. App'x 1, 4-5 (6th Cir. 2009) (applying *Turner* test to free exercise claim arising from denial of Kosher meals).

The test under the First Amendment for justifying an impingement on constitutional rights is more favorable to prison officials than the RLUIPA test. Under RLUIPA, prison officials must show that burdening a prisoner's exercise of religious is necessary to further compelling governmental interests and that it is the last restrictive means to do so. By contrast, First Amendment jurisprudence under *Turner* and its progeny require only that abridgement of the prisoner's rights be "reasonably related to legitimate penological interests." *See Colvin*, 605 F.3d at 296 (the First Amendment affords less protection to free-exercise rights than RLUIPA). In the present case, defendant Martin justifies the prison's refusal to provide plaintiff with vegan Kosher meals on the basis of governmental interests involving the safe, orderly and cost-effective operation of the state prisons. Defendants are especially worried about requests for prison transfers justified by the false assertion of a religious dietary requirement. Without doubt, the safe, orderly and cost-effective operation of the state prisons is a legitimate penological interest. It is not possible on the present record, however, to find a valid, rational connection between those interests and the facts of this case.

For the same reasons discussed in connection with the RLUIPA claim above, factual disputes prevent the entry of summary judgment on behalf of defendant Martin on plaintiff's First

Amendment free-exercise claim. Martin has articulated in general fashion at least one legitimate penological interest that could theoretically justify a refusal to accommodate plaintiff's demand for a religious diet -- prohibitive cost. But the factual dispute between plaintiff and defendant makes it impossible on the present record to evaluate this justification. If the strict vegetarian diet presently served to Buddhists and Seventh Day Adventist prisoners at LCF would satisfy plaintiff's religious demands, defendant's justification based on cost appears to be insubstantial. If, by contrast, the MDOC would be required to institute an entirely new menu plan at LCF -- providing for the first time a strict vegetarian diet that also meets Kosher dietary restrictions -- the cost and complexity of accommodation looms much larger. The present record is insufficient to resolve this question, and so precludes summary judgment in favor of Martin on the merits of the First Amendment claim.

Even though Martin's decision was based on an unconstitutional consideration and may not be justified, Martin may nevertheless be entitled to judgment under the doctrine of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. Qualified immunity analysis involves two inquiries. First, the court must examine the facts in a light most favorable to plaintiff to determine whether plaintiff has established a violation of a constitutional right. Second, the court must determine whether the right at issue was clearly established when the defendant acted. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). The contours of the right must be "sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The court must focus on whether, at the time the defendant acted, the right asserted was clearly established by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004); *see also Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010). The court has discretion to analyze the two prongs of the immunity test in any reasonable sequence. *Pearson*, 555 U.S. at 236.

Defendant's discussion of the qualified immunity issue consists of two paragraphs of boilerplate, followed by a single sentence of analysis: "As discussed above, Hall's constitutional rights were not violated and Defendants acted reasonably at all times." (Brief at 7, docket # 19). Thus, defendant has addressed only the first immunity test: whether the undisputed facts make out a violation of a constitutional right. I have already concluded that defendant's own affidavit establishes his reliance on an unconstitutional standard and that material issues of fact remain concerning the application of the *Turner* factors to justify his decision. Therefore, Martin has not established his qualified immunity defense on the first prong of analysis.

Defendant makes no effort to address the second prong of qualified immunity analysis or to analyze the state of the law as it existed in June 2010, when he denied plaintiff's request for a religious diet on the sole basis that a strict vegetarian diet is not necessary to the practice of Judaism. If defendant had undertaken such an analysis, he would have learned that First Amendment jurisprudence clearly established that denial of a religious accommodation on the basis that it was not "necessary" to the exercise of a person's chosen faith violates the First Amendment. In plaintiff's request for accommodations, he cited Chief Judge Maloney's published decision in *Dawson v. Burnett*, 631 F. Supp. 2d 878 (W.D. Mich. 2009), in which Judge Maloney denied

-24-

summary judgment to Reverend Martin's MDOC predecessor in a similar case. The plaintiff in *Dawson* was denied a request to eat a strict vegetarian diet on the basis that such a diet was not "required" for the exercise of Dawson's Buddhist faith. Relying on Supreme Court and Sixth Circuit authority, Judge Maloney held that a prisoner must only show that his belief or practice is religious "in his own scheme of things." 631 F. Supp. 2d at 881 (citing *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)). The court went on to explain that a prisoner need only establish his requested diet is based upon his own religious beliefs, that is, that the prisoner's motivation is religious and not secular in nature. Citing Supreme Court authority, Judge Maloney rejected the MDOC's argument that a plaintiff must show that the requested accommodation is "central or indispensable to a particular religion." *Id.* at 882. Defendant Martin was actually aware of the *Dawson* case, as plaintiff brought it to his attention. Martin should have been aware of the then recent Sixth Circuit decision in *Colvin v. Caruso*, 605 F.3d 282 (6th Cir. 2010), a case also involving denial of a prisoner's request for a Kosher diet by Martin's predecessor. The court expressly disapproved a focus on whether the requested accommodation comported with the tenets of Judaism, as opposed to whether the request was subjectively sincere. 605 F.3d at 298. This was not a new rule; the Supreme Court has repeatedly rejected any inquiry into the orthodoxy or plausibility of a religious claim in Free Exercise cases. *See, e.g., Employment Div. v. Smith*, 494 U.S. 872, 886-87 (1990). "It is simply not appropriate for a prison official to argue with a prisoner regarding the objective truth of a prisoner's religious belief." *Nelson v. Miller*, 570 F.3d 868, 881 (7th Cir. 2009); *accord, Jackson v. Mann*, 196 F.3d 316, 319 (2d Cir. 1999) ("While prison officials may assure themselves that Jackson's religious beliefs are sincerely held, they need not -- indeed cannot -- determine the 'objective truth of [his] beliefs.'" (quoting *Patrick v. LeFeure*, 745 F.2d 153, 157 (2d Cir. 1984))).

-25-

By denying plaintiff's request for a religious accommodation because it did not comport with Reverend Martin's understanding of how a Jew is required to live, Martin abridged clearly established First Amendment rights that he should have been aware of.  Although an inquiry into plaintiff's subjective religious sincerity was warranted, an examination of his religious orthodoxy was not.  Martin is not entitled to qualified immunity on plaintiff's damage claims.

## II.    Motion For Preliminary Injunction

Plaintiff seeks a preliminary injunction requiring defendants to offer him a Kosher vegan diet.  (Motion, docket # 17).   The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Int'l Dairy Foods Ass'n v. Boggs,* 662 F.3d 628, 635 (6th Cir. 2010).  In exercising discretion in a motion for preliminary injunction the court must consider and balance four factors: 1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; 2) whether the movant has shown irreparable injury; 3) whether the preliminary injunction could harm third parties; and 4) whether the public interest would be served by issuing a preliminary injunction. *See Hunter v. Hamilton County Bd. of Elections,* 635 F.3d 219, 223 (6th Cir. 2011); *Babler v. Futhey*, 618 F.3d 514, 519-20 (6th Cir. 2010).  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.  *See Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010); *Jones v. Caruso*, 569 F. 3d 258, 265 (6th Cir. 2009). "When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor."[4] *Connection Distrib. Co.*

---

[4] "'[I]t is generally useful for the district court to analyze all four factors, especially since [appellate] analysis of one of the factors may differ somewhat from the district court's.'" *Certified*

-26-

*v. Reno,* 154 F. 3d 281, 288 (6th Cir. 1998); *see Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012).

Additionally, the Prison Litigation Reform Act imposes restrictions on the issuance of preliminary injunctive relief in conditions-of-confinement cases, requiring specific findings that the relief is narrowly drawn and extends no further than necessary to correct the harm found, that it represents the least intrusive means necessary to correct that harm, and is not outweighed by any adverse impact on public safety or the operation of the prison.  18 U.S.C. § 3626(a)(2).  These factors substantially overlap the common-law factors set out above, but merit separate consideration. *See Hadix v. Johnson*, 367 F.3d 513, 515 (6th Cir. 2004).

On the first, and most important prong of the common-law test, I find that plaintiff has a strong chance of success on the merits of his RLUIPA claim against Martin for an injunction in his official capacity.  Martin's reason for denying plaintiff's request for accommodation, based on a finding that a vegan diet is not "necessary" to the practice of Judaism, strayed from the issue of subjective sincerity into the statutorily irrelevant issue of whether the requested diet was "compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  Without repeating the analysis of section I.C. above, suffice it to say that defendant's own rationale for his decision does not withstand legal scrutiny under RLUIPA and that the record already supports a *prima facie* violation of the statute.

The next factor in the preliminary injunction analysis is whether irreparable injury will occur if the preliminary injunction is not granted.  *Miller.*, 622 F.3d at 533.  In *Elrod v. Burns*,

---

*Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 n.3 (6th Cir. 2000)).

427 U.S. 347, 373 (1976), the United States Supreme Court held, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See also New York Times Co. v. United States*, 403 U.S. 713 (1971); 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2948.1 (2d ed. 1995 & Supp. 2011). Plaintiff claims his religious belief is Messianic Judaism. His religious beliefs mandate that he eat a vegan diet. The analysis in section I.C. of this report and recommendation found that plaintiff's statutory right to practice his religion is likely being violated. In accordance with the Supreme Court decision in *Elrod*, 427 U.S. 347, plaintiff in this case has shown irreparable injury.

The third relevant factor is harm to third parties and the fourth involves the public interest. *Miller*, 622 F.3d at 533. The unresolved factual dispute prevents plaintiff from prevailing on these issues. If LCF is already serving a strict vegetarian menu that will accommodate plaintiff's religious dietary demands, the harm to the prison system or those who run it will be negligible. If, by contrast, plaintiff is asking the court to impose a new vegan, Kosher menu at LCF, the institutional harm could be tremendous. The function of a preliminary injunction is to preserve the status quo pending a final resolution of the case. *See Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n.13 (6th Cir. 2007); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997). An order reinstating plaintiff to the same vegan, Kosher diet he had in April 2010 would do precisely that, by returning the parties to the "last, peaceable, uncontested status" existing before the dispute arose. *See Beltronics USA, Inc. v., Midwest Inven. Dist., LLC*, 562 F.3d 1067, 1070-71 (10th Cir. 2009). If, by contrast, preliminary injunctive relief would require an entirely new menu option in a prison housing and feeding hundreds of inmates, the disruption and

cost could well be prohibitive.  Such a preliminary injunction would disrupt the status quo and therefore must be supported by an especially strong showing.  *See id.*

If plaintiff would be satisfied with access to an existing strict vegetarian diet at LCF, a preliminary injunction might be available to him without palpable harm to the interests of defendant and the prison system.  Plaintiff has the burden of establishing entitlement to extraordinary injunctive relief.  He has not shown that an order requiring a Kosher vegan diet at LCF will not require significant cost and disruption.  Therefore, the third and fourth relevant factors weigh heavily against injunctive relief on the present record.  If plaintiff concedes that the diet now offered to Buddhists and Seventh Day Adventists would satisfy his religious dietary requirements, his request for injunctive relief would take on a different tenor and would be subject to reconsideration.  If not, he will have the substantial burden of showing that his request for a Kosher, vegan diet can be accomplished without significant cost to valid penological interests in order to allow extraordinary equitable relief.

The same lack of factual clarity in the present record prohibits the issuance of preliminary injunctive relief under 18 U.S.C. § 3626(a)(2).  An order reinstating plaintiff to a Kosher vegan menu that is already available at LCF (or one that could be implemented at *de minimis* cost) would likely meet the PLRA prerequisites for injunctive relief, as it would be narrowly tailored, minimally intrusive, and not the cause of undue expense or burden to the prison system.  By contrast, the compelled implementation of a new menu system at a large state prison could easily be deemed to violate each of the statutory restrictions.

## **Recommended Disposition**

For the foregoing reasons, I recommend:

A.    Defendants' motion for summary judgment (docket # 18) should be granted in part and denied in part as follows:

(1)    Defendants McKinney, O'Brien and Lawrence should be granted a summary judgment on all claims.

(2)    Defendant Martin should be granted a summary judgment on all claims arising from the alleged change in food service policy for Jewish prisoners housed in LCF, effective April 2010.

(3)    Defendant Purves should be granted summary judgment on all claims arising from the June 16, 2010 decision to deny plaintiff's request for a Kosher strict vegetarian diet on religious grounds.

(4)    The motion of defendants Martin and Purves in their official capacities for summary judgment on plaintiff's RLUIPA claims for injunctive relief should be denied.

(5)    The motion of defendants Martin and Purves for summary judgment on the section 1983 claims for damages in their official capacities should be granted on Eleventh Amendment grounds.

(6)    The motion of defendants Martin and Purves for summary judgment on the merits of the section 1983 damage claims against them for abridgement of First Amendment rights, either on the merits or on the ground of qualified immunity, should be denied.

(7)      Defendants Martin and Purves should be ordered to answer the

complaint.

B.      Plaintiff's motion for a preliminary injunction reinstating a Kosher, vegan diet

(docket # 17) should be denied.


Dated:   March 29, 2012                    /s/  Joseph G. Scoville
                                           United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).